IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMY BLANKENSHIP, ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NISSAN NORTH AMERICA, INC., and ) <br> MB OF MURFREESBORO NISSAN, ) <br> LLC, ) <br> ) <br>    Defendants. ) | NO. 3:22-cv-00809 <br><br> JUDGE RICHARDSON |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Nissan North America, Inc.'s ("Defendant NNA") motion to dismiss Counts I and II of the complaint for failure to state a claim (Doc. No. 8, "Motion"), accompanied by a supporting memorandum (Doc. No. 9). Plaintiff filed a response (Doc. No. 12), and Defendant NNA filed a reply (Doc. No. 13). For the reasons stated herein, the Motion will be granted.

### ALLEGED FACTS

Plaintiff purchased a 2021 Nissan Altima ("Altima") from Defendant NNA's authorized dealerships, Nissan of Cool Springs and Nissan of Murfreesboro, on September 9, 2021. (Doc. No. 1-1 at 3). Over the course of several months, the Altima experienced several issues, such as stopping while accelerating and periodically having the "check engine" light come on. (*Id.* at 4).[1]

---

[1] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of ___") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

When these issues arose, Plaintiff would take the Altima into the authorized dealerships for repair. (*Id.*). The Altima has now been at one of the authorized dealerships since September 28, 2021. (*Id.*). Defendant has offered to pay Plaintiff,[2] presumably for her inability to use the Altima. (*Id.* at 5). From what the Court can tell from the complaint, though only including a prayer for damages in the complaint, Plaintiff appears to be under the impression that Defendant NNA must repair the vehicle or is nonetheless liable even in light of its offer to pay Plaintiff. (*Id.*).

The complaint was first filed in the Circuit Court for Williamson County, Tennessee and was removed to this Court on October 12, 2022 based on the complaint including a claim in Count V) under federal law, namely the Magnuson Moss Warranty-Federal Trade Commission Improvements Act, 15 U.S.C. § 2301. (Doc. No. 1). The complaint contains five counts. (Doc. No. 1-1). Defendant seeks dismissal of only Counts I and II. (Doc. Nos. 8, 9). Count I is titled "Breach of original purchase contract, breach of warranty, breach of expressed [sic] warranty, breach of the warranty of merchantability and breach of the warranty of fitness for a particule [sic] purpose." (Doc. No. 1-1 at 6). Count II is titled "Tennessee Consumer Protection Act violation" and asserts violations of the Tennessee Consumer Protection Act ("TCPA," Tenn. Code Ann. § 47-18-101 *et seq.*), including § 47-18-104(b)(5), (b)(7), (b)(19), and (b)(27). (*Id.* at 8).

LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the

---

[2] Exhibit 3, which is cited in and attached to the complaint, suggests that the payment was offered to settle the dispute between Plaintiff and Defendant for the amount of $2,000. (Doc. No. 1-1 at 19). The complaint does not specify what this "payment" would cover, *i.e.,* whether it would also include the cost of a repair and whether it is meant to compensate Plaintiff for her inability to use the Altima.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under

Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

DISCUSSION

1. **Plaintiff's Breach of Contract Claims (for Breach of Express Contract and Breach of Implied warranties)**

In Count I, Plaintiff takes the unwise path of cramming into a single count a bunch of different things that are best considered separate claims. Count I is titled,

BREACH OF ORIGINAL PURCHASE CONTRACT, BREACH OF WARRANTY, BREACH OF EXPRESSED WARRANTY, BREACH OF THE WARRANTY OF MERCHANTABILITY AND BREACH OF THE WARRANTY OF FITNESS FOR A PARTICULE PURPOSE.

In addition to containing two typographical errors, this title is problematic because it suggests that a claim for "breach of warranty" exists separate from a claim for "breach of expressed [sic] warranty" or breach of the two referenced implied warranties. But the Court sees no basis for that suggestion and disregards it.

Defendant NNA argues that Plaintiff fails to state a claim for breach of contract, and therefore also does not state a claim for the breach of any implied warranties. According to Defendant NNA, Plaintiff does not allege facts indicating that she was in privity of contract with Defendant NNA, *i.e.* that a contract existed between Plaintiff and Defendant NNA. (Doc. No. 9 at 3–4).[3]

---

[3] It is axiomatic that privity of contract exists between parties if (and only if) there exists a contractual relationship between them. *See, e.g.,* Black's Law Dictionary 1199 (6th ed. 1990) (defining "privity of contract" as "(t)hat connection or relationship which exists between two or more contracting parties."

"Under Tennessee law, the elements for a breach-of-contract claim are: (1) the existence of an enforceable contract; (2) nonperformance amounting to breach of the contract; and (3) damages caused by the breach of contract."[4] *Thornton v. Dutch Naturals Processing LLC*, 3-20-cv-00159, 2022 WL 4359066, at *5 (M.D. Tenn. Sept. 20, 2022). Additionally, and as particularly relevant in this case, "[t]here is no doubt that a fundamental principal of contract law provides that only parties to a contract are bound by that contract. . . ." *Cyclonaire Holding Corp. v. Baker*, 4-16-cv-467, 2017 WL 3206894, at *5 (D. Neb. Apr. 11, 2017) (internal quotation marks omitted); *Austin v. Camping World RV Sales, LLC*, No. 221CV02541TLPCGC, 2023 WL 2450165, at *4 (W.D. Tenn. Jan. 18, 2023) ("Under Tennessee law, the elements of a breach of contract claim are the existence of an enforceable contract, a non-performance amounting to a breach, and damages caused by the breach. The Sixth Circuit has stated that it is 'axiomatic that only parties to contracts are liable for their breach.'") (quoting *Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 779 (6th Cir. 2019)) (one citation and internal quotation marks omitted)), *report and recommendation adopted sub nom. Austin v. Camping World of Memphis*, No. 221CV02541TLPCGC, 2023 WL 1880129 (W.D. Tenn. Feb. 10, 2023).

To Defendant NNA's argument that the complaint does not allege facts indicating the existence of an enforceable contract between Defendant NNA and Plaintiff, Plaintiff responds in a single paragraph. Therein, she relies on the "vehicle buyer's order" (Doc. No. 1-1 at 16-17) attached to the complaint, which is a document that clearly is in the form of a contract, and in particular a contract between Plaintiff (and a co-buyer) and an unspecified "Seller." Plaintiff

---

Accordingly, as did Defendant NNA in its briefing, the Court herein refers interchangeably to (a) the existence (or lack thereof) of privity of contract between Plaintiff and Defendant NNA and (b) the existence (or lack thereof) of an (enforceable) contract between Plaintiff and Defendant NNA.

[4] The parties do not dispute that Tennessee law applies to Plaintiff's state-law claims.

argues that the vehicle buyer's order is "significant evidence of a contractual relationship in this case with [Defendant NNA], *through its authorized dealership*." (Doc. No. 12 at 3) (emphasis added). Notably, perhaps because the vehicle buyer's order is on letterhead of "Nissan of Cool Springs," not of Defendant NNA, Plaintiff does not allege in the complaint or contend in her briefing that Defendant NNA was the "Seller." Rather, she alleges in the complaint, far less specifically and in wholly conclusory fashion, that: (i) she "purchased [the vehicle] from" *Defendant NNA*, "through its authorized dealerships, Nissan of Cool Springs and Nissan of Murfreesboro" and (ii) *Defendant NNA* "issued to the Plaintiff[ ] a written warranty concerning the vehicle." (Doc. No. 1-1 at 3-4).[5] Defendant NNA does not contend that Defendant NNA is the Seller. And Plaintiff does not allege any other factual matter suggesting that she had a contractual relationship with Defendant NNA. True, construing the complaint in Plaintiff's favor, her allegation that she "purchased" is an allegation that she had a "purchase" contract with Defendant NNA. But as noted, this allegation is wholly conclusory and thus disregarded in the plausibility analysis; indeed, any factual matter related to this allegation actually is *inconsistent* with it, because such factual matter (the vehicle buyer's order attached to the complaint) suggests only that Nissan of Cool Springs rather than Defendant NNA is Plaintiff's counterparty to the contract, *i.e.*, the "Seller." And the allegation that Plaintiff's purchase, allegedly "from [Defendant NNA]," was "through" Defendant NNA's "authorized dealership" is as consistent with the notion that the *only* counterparty was the "authorized dealership" as it is with the notion that Defendant NNA was (instead or additionally) a counterparty.

---

[5] The referenced "Nissan of Murfreesboro" is Defendant NNA's co-Defendant, which is not a movant herein. For whatever reason, Nissan of Cool Springs is not a Defendant herein.

As noted above, it is a basic principle of contract law that generally only the parties to a contract can be held liable for its breach.. Assuming (in Plaintiff's favor) both that the vehicle buyer's order identified by Plaintiff constitutes or suggests the existence of a contract between Plaintiff and "Seller" and that the vehicle was purchased "through" Defendant NNA's "[a]uthorized dealership," that does not render plausible any allegation that Defendant NNA in particular was a counterparty to the contract. Thus, under basic contract law, the contract generally would not bind Defendant NNA and therefore Defendant NNA cannot be held liable under the contract. And Plaintiff provides no explanation or caselaw to support an opposite conclusion. Nor does Plaintiff assert any basis for the application of some exception to this general rule.[6] Plaintiff therefore has failed to plausibly allege the existence of a contract between herself and Defendant NNA, and in turn has failed to provide a basis for Defendant NNA's liability. It follows that her breach of contract claim must be dismissed.

Defendant NNA argues that Plaintiff's breach of-implied-warranty claims[7] likewise must be dismissed due to the lack of privity of contract between itself and Plaintiff. In her response, Plaintiff does not contest that her breach-of-implied-warranty claims require the existence of a

---

[6] It is true that courts have recognized a limited number of theories whereby a non-party to the contract can be bound by the contract. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) (explaining that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel. . ."). Plaintiff has neither alleged in the complaint (nor argued in her briefing) that any such theory renders NNA liable, nor alleged in the complaint factual matter to support the application of such a theory to NNA in this case. Therefore, the Court does not consider whether Defendant NNA is liable to Plaintiff under any such theory, and instead conducts its plausibility analysis without regard to any such theory.

[7] Specifically, Count I of the complaint includes a claim of breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose, which are grounded in back-to-back sections of Tennessee's version of the Uniform Commercial Code, namely Tenn. Code. Ann. § 47-2-314 & 315. (Doc. No. 1-1 at 5-6). Defendant does not dispute that the UCC is applicable to a contract for sale of an automobile (although it does deny, of course, that it was itself a party to a contract for the sale of an automobile to Plaintiff).

contractual relationship between herself and Defendant NNA. (Doc. No. 12 at 3).[8] Because the Court has found that Plaintiff has failed to adequately allege the existence of a contract between herself and Defendant NNA, the Court also finds that Plaintiff has not stated claims based on a breach of implied warranty. Plaintiff's claims for breach of the warranty of merchantability and breach of the warranty of fitness for a particular purpose must therefore be dismissed.

Finally, there remains Plaintiff's breach-of-express-warranty claim. Defendant NNA does not explicitly address this claim in its motion.[9] However, as indicated in a footnote herein, Tennessee courts have recognized that "Tennessee law does not allow recovery of economic losses under a breach of warranty theory absent privity. . .." *Messer Griesheim Indus. Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003). And as further noted in that footnote Plaintiff requests only economic damages in the complaint. (Doc. No. 1-1 at 13). Therefore, Plaintiff has failed to state a claim for breach of express warranty because the Court finds that she has not established facts to support a finding that she is in privity with Defendant NNA. Thus, Plaintiff's breach-of-express-warranty claim must be dismissed.

2. **Plaintiff's TCPA Claim**

Defendant NNA next argues that Plaintiff's TCPA claim must be dismissed because (according to Defendant NNA) she has failed to plead it with particularity under Federal Rule of

---

[8] As Defendant NNA notes, (Doc. No. 9 at 4), Tennessee law no longer requires privity of contract for an action for breach of warranty (including one under the Uniform Commercial Code) seeking recovery for *personal injury*. But the instant action is not one for personal injury, but rather one for economic damages. And as Defendant NNA further notes, the requirement of privity apparently still exists under Tennessee law for breach of warranty actions that are not seeking recovery for personal injury. (*Id.* at 10 (quoting *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 931 (1991))).

[9] Although Defendant does not explicitly address Plaintiff's breach-of-express-warranty claim, Defendant does clearly state that it seeks dismissal of Counts I and II in the complaint, which necessarily encompasses this claim. Therefore, the Court's dismissal of this claim is not *sua sponte*, but is pursuant to Defendant's request to dismiss Count I in its entirety.

Civil Procedure 9(b). (Doc. No. 9 at 6–7). As noted above, Plaintiff brings this claim based on alleged violations of Tenn. Code Ann. § 47-18-104(b)(5), (b)(7), (b)(19), and (b)(27). (Doc. No. 1-1 at 6). Defendant NNA argues that the TCPA claim must be dismissed because the complaint does not include facts to support any of the alleged violations of the TCPA. (Doc. No. 9 at 6–7). In her response, Plaintiff defends her TCPA claim by asserting violations only of paragraphs (7) and (19)—and not paragraphs (5) and (7)—of Tenn. Code Ann. § 47-18-104(b). (Doc. No. 12 at 4). Plaintiff has therefore abandoned her allegation of violations of Tenn. Code Ann. § 47-18-104 (and b)(5) b(27)..

As for the remaining bases of Plaintiff's TCPA claim, those under § 47-18-104(b)(7) and (b)(19)[10] of the Tennessee Code, the Court agrees with Defendant NNA that Plaintiff fails to meet the heightened pleading standard set forth by Rule 9(b). Plaintiff does not dispute that Rule 9(b) applies to these claims. (Doc. No. 12 at 3–4). And any such dispute would have run headlong into the fact that "[d]istrict courts in Tennessee have held that Rule 9(b) applies to TCPA claims." *Harding v. BMW of North America, LLC*, 3-20-cv-00061, 2020 WL 5039439, at *2 (M.D. Tenn. Aug. 26, 2020). "[A]t a minimum, Rule 9(b) requires that the plaintiff specify the who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). Accordingly, Plaintiff must allege specific fraudulent or deceptive acts rather than merely allege fraud or deception in general terms (or, for that matter, merely alleged misrepresentations that do not amount to fraud or deception). *Cf. Bridgestone Am.'s, Inc. v. Int'l Business Machines Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016) (noting that for TCPA claims, a plaintiff must "set forth specific fraudulent or deceptive acts rather than general allegations.") (internal quotations marks omitted). "Although the TCPA imposes no single

---

[10] These provisions of the Tennessee Code describe conduct that constitutes unfair or deceptive acts.

standard to determine whether an act or practice is deceptive, the Tennessee Supreme Court has described a deceptive act or practice as a material representation, practice, or omission likely to mislead . . . reasonable consumers' to their detriment." *Id.* (internal quotation marks omitted).

Defendant NNA argues that the complaint fails to plead any misrepresentation on the part of Defendant NNA, let alone the time, place, and manner of the alleged misrepresentation. (Doc. No. 9 at 7). Without citing anything in the complaint, Plaintiff responds by arguing that the complaint pleads misrepresentation because (according to Plaintiff) the Altima was represented as being of a certain quality when in fact it was not and that the warranty represented that Defendant NNA would repair the Altima and it has not done so. (Doc. No. 12 at 4).

The Court agrees with Defendant NNA that the complaint fails the Rule 9(b) pleading standard. Specifically, Plaintiff has not identified, either in the complaint or in the response, any deceptive acts or practices likely to mislead consumers. The fact that a product did not turn out to be as allegedly promised does not mean that the promise constituted (or involved) a misrepresentation at the time it was made; still less does it by itself suggest that a Defendant acted deceptively. For these reasons, Plaintiff's TCPA claim must be dismissed.

3. **Attorneys' Fees**

Finally, Defendant argues that it is entitled to attorneys' fees associated with seeking dismissal of Plaintiff's TCPA claim. (Doc. No. 9 at 7). As pointed out by Defendant, attorneys' fees may be awarded for TCPA claim "upon [a court's] finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs." Tenn. Code § 47-18-109(e)(2). In her response, Plaintiff argues attorneys' fees are not appropriate because her TCPA claim have merit. (Doc. No. 12 at 4).

Therefore, Plaintiff's argument as to why attorneys' fees are inappropriate hinges on her argument that her TCPA claim is valid (which the Court has rejected above). !

"Tennessee courts 'do not interpret the statutory term 'without legal or factual merit' to mean without sufficient merit to prevail, but rather as so utterly lacking in an adequate factual predicate or legal ground as to make the filing of such a claim highly unlikely to succeed.'" *Borescopes R Us v. 1800Endoscope.com, LLC*, No. 3-09-01002, 2010 WL 4809955, at *1 (M.D. Tenn. Nov. 18, 2010) (quoting *Glanton v. Bob Parks Realty*, M2003-01144-COA-R3-CV, 2005 WL 1021559, at *9 (Tenn. Ct. App. Oct. 24, 2005)). "[T]he decision to award attorneys' fees [under this provision] is not mandated, [sic] but remains within the sound discretion of the trial court." *Alexander Realty Cap., Inc. v. Laurel Cove Dev., LLC*, 3-07-0755, 2009 WL 541340, at *12 (M.D. Tenn. Mar. 4, 2009).

The Court agrees with Defendant that attorneys' fees are warranted in this case. Plaintiff does not include scintilla of a factual basis for her TCPA claim in the complaint. As discussed above, Plaintiff plainly does not allege facts supporting in any regard misrepresentation on the part of Defendant NNA or otherwise deceptive practices attributable to Defendant NNA.

Moreover, there is no question whatsoever about the inappropriateness of Plaintiff's reliance on at least one of the provisions of the TCPA upon which she relied in the complaint—namely, the so-called "catchall" provision of Tenn. Code Ann. § 47-18-104(b)(27), which in pertinent part deems unlawful "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27). As pointed out by Defendant, the text of § 47-18-104(b)(27) makes explicit that the catchall provision can be enforced only by the "office of the [Tennessee] attorney general and reporter," Tenn. Code Ann. § 47-18-104(b)(27), and so a private party's claim based on the catchall provision must be

dismissed. *E.g.*, *Sandlin v. CitiMortgage, Inc.*, No. 219CV02368JTFATC, 2021 WL 1581771, at *13 (W.D. Tenn. Mar. 1, 2021), *report and recommendation adopted*, No. 219CV02368JTFATC, 2021 WL 1156627 (W.D. Tenn. Mar. 26, 2021). And if someone somehow could have overlooked from the statute itself the fact that there is no private right of action for a violation of the catchall provision, this point has been made clear repeatedly by district courts in Tennessee, including this one. *See, e.g., id.*; *Altruist, LLC v. Medex Patient Transp., LLC*, 308 F. Supp. 3d 943, 951 (M.D. Tenn. 2018) (noting that "the TCPA's catchall provision in Tenn. Code Ann. § 47–18–104(b)(27) is enforceable only by the attorney general"); *Arch Wood Prot., Inc. v. Flamedxx, LLC*, 932 F. Supp. 2d 858, 870 n.9 (E.D. Tenn. 2013) (noting that the catchall provision "was amended in 2011 to circumscribe its enforcement to be solely the purview of the 'attorney general and reporter and the director of the division.'").

Plaintiff's lack of diligence to do something as simple as reading the statutory provision under which she brings a claim, or checking applicable case law regarding such provision, meets the standard of being a frivolous claim. As for the remaining bases for Plaintiff's TCPA claim, as noted above, Plaintiff does not attempt to support the claims with any facts in the complaint.

True, some courts have expressed concerns about awarding attorneys' fees for a TCPA claim where the complaint also contains non-TCPA claims (though the Court notes that Plaintiff did not herself raise this argument). *See Laurel Cove Dev., LLC*, 2009 WL 541340, at *12–*13. In the Court's view, however, Plaintiff took on the risk of attorneys' fees being awarded to Defendant NNA when she included in the complaint a frivolous TCPA claim, *i.e.*, one lacking any factual or legal merit. That there may be difficulty in parsing the costs associated with defending the TCPA claim as distinct from the non-TCPA claims does not itself warrant a denial of attorneys' fees in

this case.[11] Therefore, the Court finds that attorneys' fees for the cost of defending the motion to dismiss as to Plaintiff's TCPA claim is appropriate.

## CONCLUSION

For the reasons stated herein, Defendant NNA's Motion at Doc. No. 8 to dismiss Counts I and II of the complaint is GRANTED.

Plaintiff's claims otherwise remain pending.

Within 14 days of the entry of this order, Defendant NNA shall file a notice setting forth its view as to the amount, timing and manner of an award of attorneys' fees. Within 14 days of Defendant NNA's filing, Plaintiff shall file a notice in response with her views.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[11] On the other hand, the Court will insist that Defendant undertake such parsing and notes that it does not appear that a large amount of time and effort was involved in responding (successfully) to Plaintiff's TCPA claim. The Court is committed to scrutinizing closely Defendant's requested amount of attorneys' fees.